Jenna Dakroub, CA #3501170
E: jdakroub@consumerattorneys.com
**CONSUMER ATTORNEYS**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750

*Attorneys for Plaintiff*
*Jane Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JANE DOE, | Case No.: 2:24-cv-2099 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| LEXISNEXIS RISK SOLUTIONS, INC., | **1. FCRA, 15 U.S.C. §§ 1681, _et seq._;** |
| Defendant. | **2. Cal. Civ. Code § 1785 _et seq._** |

**COMPLAINT**

Jane Doe ("Plaintiff") by and through her counsel brings the following Complaint against LexisNexis Risk Solutions, Inc. ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, and California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq.*, arising out of a tenant screening report that Defendant published to

1

Plaintiff's potential landlord, which should have been excluded from the tenant screening report.

## **INTRODUCTION**

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") and California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq.*

2.     Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.     Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included a sealed and expunged civil record that should have been excluded from the tenant screening report, and even managed to misreport the sealed case as an eviction for failure to pay rent.

4.     In fact, Plaintiff has never been involved in an eviction proceeding for failure to pay rent. The underlying eviction was related to a dog bite incident.

2
COMPLAINT AND DEMAND FOR JURY TRIAL

5.    Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the inaccurately reported sealed and expunged records.

6.    Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Hamilton County, Indiana, regarding the expunged eviction proceeding supposedly relating to her failure to pay rent prior to publishing the information to Plaintiff's prospective landlord.

7.    Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the underlying eviction proceeding did not pertain to a failure to pay rent, and that the case was dismissed, sealed and expunged.

8.    Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate and stigmatizing.

9.    Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10.    Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of her needs, causing her physical

injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

11.    As a result of Defendant's violations of the FCRA and CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the expunged and inaccurate eviction reporting – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i. Plaintiff also brings claims against the Defendants under analogous sections of the CCRAA.

## **PARTIES**

13.    Jane Doe ("Plaintiff") is a natural person residing in Arleta, California and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     Defendant LexisNexis Risk Solutions, Inc. ("Defendant") is a corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. LexisNexis can be served at its registered agent, C T Corporation System, located at 289 S Culver St., Lawrenceville, GA 30046.

15.     Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.   These reports are provided in connection with a business transaction initiated by the consumer.

16.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

17.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

25.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

29.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including civil and criminal records, and sex offender

registration data.  As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

30.     Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated civil and criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

31.     Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32.     Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

34.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the

costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting expunged civil records and was even misreporting same by stating the underlying eviction was due to failure to pay rent when in actuality it was due to a dog bite incident.

37.     As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**Plaintiff Applies for an Apartment with Bella Vista Court Apartments ("Bella Vista")**

38.     Plaintiff is a registered nurse working in a hospital in the Los Angeles, California area. Specifically, Plaintiff is an IV infusion nurse.

39.     Due to the nature of the Plaintiff's specializations, Plaintiff's work requires her to commute extensive distances.

40.     Currently, Plaintiff is renting an apartment from a family.

41.     However, Plaintiff has decided to move closer to the freeway to ease the burdens of her commute to work.

42.    In or around November 2023, Plaintiff began searching for a new apartment in the Los Angeles, California area.  Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, clean, near the freeway, and within her budget.

43.    On November 5, 2023, Plaintiff submitted an application to Bella Vista, and paid a small application fee.

44.

**Defendant Published an Inaccurate Tenant Screening Report to Bella Vista**

45.    Bella Vista contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

46.    On or about November 5, 2023, Bella Vista ordered a tenant screening report on Plaintiff from Defendant.

47.    On or about November 5, 2023, Defendant sold a tenant screening report about Plaintiff to Bella Vista, wherein Defendant published information including a compilation of Plaintiff's and civil records history.

48.    The tenant screening report is a consumer report regulated by the FCRA.

49.    Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

50.    Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing non-payment eviction proceeding

from Hamilton County, Indiana. This reporting was referenced in Cohen's denial letter on behalf of Bella Vista to Plaintiff, as follows:

Regarding rental application for Michelle R Hicks submitted on 11/5/23

As a result of the tenant screening report provided by Lexis Nexis Risk Solutions

We are unable to move forward with the apartment rental at this property based on the rental screening referencing a case # listed as

29D051801SC000326

51.    The non-payment eviction proceeding reported by Defendant about Plaintiff is inaccurate.

52.    Plaintiff has never been subject to a non-payment eviction proceeding. Instead, Plaintiff was subject to eviction due to a dog-bite incident.

53.    Furthermore, the subject proceeding was dismissed, sealed and expunged on September 15, 2023, and therefore should not have been reported.

54.    A cursory review of the widely available underlying public court records confirms that the subject eviction was due to a dog-bite incident and not non-payment. It further confirms that this case was dismissed, and sealed and expunged.

55.    The sole reason the inaccurate eviction proceeding record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

56. Had Defendant followed reasonable procedures, it would have discovered that the subject eviction was due to a dog-bite incident and not non-payment. It further confirms that this case was dismissed, and sealed and expunged. Therefore, Defendant should not have reported the subject eviction in Plaintiff's tenant screening report to Bella Vista.

57. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Bella Vista Denies Plaintiff's Housing Application**

58. About a week after submitting her application, Plaintiff was notified by Cohen that her housing application for housing with Bella Vista was denied as a direct result of the expunged and inaccurate eviction proceeding reported by Defendant.

59. Panicked and worried, Plaintiff explained that this case was dismissed against herself, and was sealed and expunged.

60. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting of the eviction proceeding, both in relation to the Bella Vista apartment, but also the impact of the same on her future.

61. Specifically, Defendant reported an eviction proceeding that was expunged from the public record. The underlying public court record information

was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Bella Vista, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report**

62.     On November 14, 2023, desperate to secure housing with Bella Vista and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff submitted an online dispute with Defendant.

63.     Plaintiff identified herself and provided information to Defendant to support her dispute.

64.     Plaintiff specifically disputed the inaccurate report of an eviction proceeding that should have been excluded from her tenant screening report, because of its sealing and expungement. .

65.     Plaintiff specifically asked Defendant to investigate and correct its reporting in any tenant screening report about Plaintiff.

**Defendant failed to Conduct a Reasonable Reinvestigation and Correct the Tenant Screening Report**

66.     On December 14, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and determined that its reporting was accurate and that it would not correct the tenant screening report otherwise.

13
COMPLAINT AND DEMAND FOR JURY TRIAL

67. Defendant failed to issue a corrected tenant screening report to Bella Vista.

68. Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's November 2023 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A), and Cal. Civ. Code § 1785.16.

**Plaintiff's Second Dispute**

69. On December 15, 2023, desperate to secure housing with Bella Vista and riddled with worry over the far-reaching impacts of the inaccurate information still present on her tenant screening report, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff's second dispute was lodged via telephone.

70. Plaintiff identified herself and provided information to Defendant to support her dispute.

71. Plaintiff specifically disputed the inaccurate report of an eviction proceeding that should have been excluded from her tenant screening report, because of its sealing and expungement.

72. Plaintiff specifically asked Defendant to investigate and correct its reporting in any tenant screening report about Plaintiff.

73. On January 8, 2024, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed the expunged and inaccurate eviction records from the tenant screening report.

74.    Defendant also communicated to Plaintiff that it had issued a corrected tenant screening report to Bella Vista.

75.    Plaintiff continued to follow up with Bella Vista in hopes that the application for housing would be approved.

76.    However, upon information and belief, Bella Vista ultimately denied Plaintiff's housing application by renting the apartment to another person in the last week of December 2023.

77.    Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Bella Vista formed a negative opinion about Plaintiff and/or moved on to other candidates.

78.    Defendant's false report cost Plaintiff a housing opportunity that met her needs, including those attendant to, convenience, affordability, safety, and proximity to work.

79.    Plaintiff was looking forward to living at Bella Vista because it met her needs, including those attendant to, convenience, affordability, safety, and proximity to work by being near major highways.

80.    Because Defendant failed to issue a corrected tenant screening report, Bella Vista did not reconsider its decision to deny Plaintiff's housing application in time.

81.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek housing, Plaintiff was forced to delay her move costing Plaintiff more in traveling.

82.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

83.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **15 U.S.C. § 1681e(b)**
### **Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

84.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

85.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

86.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

87.     At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

88.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

89.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

90.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

91.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

92.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

93.     The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  See 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

94.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

95.     On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her.

96.    In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the tenant screening report and refused to correct the tenant screening report at issue.

97.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject tenant screening report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

98.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

99.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant

to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**Cal. Civ. Code § 1785.14**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

101.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

102.   Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

103.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

104.   At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

105.   Defendant violated Cal. Civ. Code § 1785.14 by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

106.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

107.   Defendant willfully violated Cal. Civ. Code § 1785.14 in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2).  Alternatively, Defendant was negligent, entitling Plaintiff to recover under Cal. Civ. Code § 1785.31(a)(2).

108.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(d).

**COUNT VI**
**Cal. Civ. Code § 1785 *et seq.***
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**

109.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

110.   The CCRAA requires consumer reporting agencies, like LexisNexis, to reinvestigate and record the current status of disputed information when notified by a consumer that an item is inaccurate or incomplete. Cal. Civ. Code § 1785.16(a).

111.   When a consumer reporting agency's reinvestigation determines that disputed information is found to be inaccurate, missing, or can no longer be verified by the evidence submitted, the consumer reporting agency is required to correct or delete that information from the consumer's file. Cal. Civ. Code § 1785.16(b).

112.   On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her.

113.   In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the tenant screening report and refused to correct the tenant screening report at issue.

114.   Defendant violated § 1785.16(b) of the CCRAA by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject tenant screening report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

115.   As a result of Defendant's violations of the CCRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

116.   Defendant willfully violated § 1785.16(b) of the CCRAA in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(a)(2).  Alternatively, Defendant was negligent, entitling Plaintiff to recover under Cal. Civ. Code § 1785.31(a)(1).

117.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to Cal. Civ. Code § 1785.31(d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

ii.   Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

iii.   Punitive damages pursuant to 15 U.S.C. § 1681n;

iv.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

v.   Actual damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2);

vi.   Statutory damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2);

vii.   Punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(2);

viii.   Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(d);

ix.   Actual damages pursuant to Cal. Civ. Code §§ 1786.50(a)(1) and/or 1785.31(a)(2);

x.   Statutory damages pursuant to Cal. Civ. Code §§ 1786.50(a)(1) and/or 1785.31(a)(2);

xi.   Punitive damages pursuant to Cal. Civ. Code § 1786.50(b);

xii.   Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1786.50(a)(2);

xiii.   Punitive damages to be determined at trial, for the sake of example and punishing defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294;

xiv.   All pre-judgment and post-judgment interest as may be allowed under the law; and

xv.   Any other and further relief as the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: March 14, 2024

*/s/ Jenna Dakroub*
Jenna Dakroub, CA #3501170
E: jdakroub@consumerattorneys.com
**CONSUMER ATTORNEYS**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750

*Attorneys for Plaintiff*
*Jane Doe*